UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE WILLY VALERA CHUQUILLANQUI,<br><br>　　　　Plaintiff,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-06320-TLT<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: ECF 3, 4 |

Before the Court is Petitioner-Plaintiff Jorge Willy Valera Chuquillanqui's *Ex Parte* Motion for Temporary Restraining Order. ECF 3, 4. Petitioner-Plaintiff filed his Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi. ECF 1.

On July 25, 2025, Petitioner-Plaintiff went to the San Francisco Immigration Court to discuss his case with the immigration judge and schedule further proceedings on his pending asylum application. ECF 1, ¶ 2. The government orally moved to dismiss his case, but the immigration judge provided Petitioner-Plaintiff time to respond and set a further hearing on October 17, 2025. *Id.* Minutes after Petitioner-Plaintiff exited the courtroom, Department of Homeland Security ("DHS") agents arrested him before he could leave the courthouse. *Id.* ¶ 3. Due to the arrest, Petitioner-Plaintiff was taken to the hospital, but was again taken into custody the next morning. *Id.*

Petitioner-Plaintiff requests that this Court (1) order Respondents to immediately release him from their custody and enjoin Respondents from re-detaining him absent further order of the

Court; (2) in the alternative, order Respondents to immediately release him from their custody and enjoin Respondents from re-detaining him unless they demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that his physical custody is required; and (3) prohibit the government from transferring him out of this District and/or removing him from the country until these habeas proceedings have concluded. *See* ECF 3, at 1. For the reasons stated below, the Court **GRANTS** Petitioner-Plaintiff's *Ex Parte* Motion for Temporary Restraining Order.

## I.   BACKGROUND

Petitioner-Plaintiff Jorge Willy Valera Chuquillanqu is an asylum seeker who fled Peru. ECF 1, ¶ 1. After Petitioner-Plaintiff arrived in the United States in December 2022, federal agents briefly detained him, determined that he was not a flight risk or danger to the community, and released him on his own recognizance with a notice to appear for removal proceedings in immigration court. *Id.* Since his arrival to the United States, Petitioner-Plaintiff has diligently attended every immigration court hearing and filed an application for asylum. *Id.* He has no criminal history. *Id.*

On July 25, 2025, Petitioner-Plaintiff went to San Francisco Immigration Court for a routine hearing before Immigration Judge Joseph Park, where the government orally moved to dismiss his case. *Id.* ¶ 2. The Immigration Judge gave Petitioner time to respond and set a further hearing on October 17, 2025. *Id.*

Nevertheless, as Petitioner-Plaintiff left the courtroom, DHS arrested him. *Id.* ¶ 3. During the arrest, started experiencing pain in the left half of his body that was paralyzed from a medical incident the year before. *Id.* As his symptoms grew worse, ICE Officers called an ambulance to take him to a hospital in San Francisco, only to return him to custody the following morning. *Id.* It appears that the agents did not have a warrant, nor did they communicate the reason for Petitioner-Plaintiff's arrest.

Petitioner-Plaintiff has serious medical conditions that require ongoing monitoring and care. In 2024, Petitioner-Plaintiff went to the hospital for serious head pain. ECF 4-1, Declaration of Magaly Emperatriz Valera ("Magaly Decl.), ¶ 6. In early 2025, he lost vision in one eye and

was partially paralyzed. *Id.* ¶ 7. He continues to be in discomfort and pain while in custody. ECF 4-2, Declaration of Ujwala Murthy ("Murthy Decl.") ¶ 7. He is experiencing swelling through the back of his neck, hands, feet, and the right side of his body—symptoms similar to what he believed was a stroke he suffered in 2024. ECF 4-3, Declaration of Jessica S. Yamane ("Yamane Decl.") ¶ 3.

## II.  LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to ... preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.' " *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner-Plaintiff's attorney has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition and has stated that counsel attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on July 29, 2025, regarding the habeas petition and motion for temporary restraining order. ECF 4-4, Declaration of Jordan Weiner ("Weiner Decl.") ¶¶ 13–16. The Court will address the *Winter* factors in turn.

### A. Likelihood of Success

The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in his favor. *Weber*, 767 F.3d at 942. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Ortiz Vargas v. Jennings*, No. 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on pre-parole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

For similar reasons as those discussed in the previously cited cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—require that Petitioner-Plaintiff be immediately released from custody, and that he be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody.

Petitioner-Plaintiff has a substantial private interest in remaining out of custody, which would allow him to live at home, work, obtain necessary medical care, and continue to provide for his family. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. The Court also concludes that the government's interest in re-detaining Petitioner-Plaintiff without a hearing is "low," particularly in light of the fact that Petitioner-Plaintiff has consistently appeared for his immigration hearings, and he does not have a criminal record. *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970.

### B. Irreparable Harm

Petitioner-Plaintiff is also likely to suffer immediate and irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Here, Petitioner-Plaintiff is suffering symptoms that are consistent with the believed-stroke he suffered in 2024. His condition is worsening, and he faces serious risks to his health. Beyond the harm to his health, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

## C. Balance of the Equities and the Public Interest

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner-Plaintiff's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, *and then quoting Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Without the requested injunctive relief, Petitioner-Plaintiff faces the danger of significant health consequences and deprivation of his liberty. Yet the comparative harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

## D. Injunctive Relief and Bond

District courts that have routinely granted temporary restraining orders barring the government from detaining noncitizens who have been on longstanding release in their immigration proceedings, without first holding a pre-deprivation hearing before a neutral decisionmaker. *See, e.g., Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025); *Pinchi v. Noem*, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D. Cal. July 4, 2025). Although Petitioner-Plaintiff filed his motion shortly after being detained, rather than immediately beforehand, the same reasoning applies to his situation. His liberty interest is equally serious, the risk of erroneous deprivation is likewise high, and the government's interest in continuing to detain him without the required hearing is low. *See Doe v. Becerra*, No. 2:25-cv-

00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025) (granting a TRO as to an individual who had been detained over a month earlier).

Petitioner-Plaintiff's immediate release is required to return him to the status quo. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to the Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-CV-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Accordingly, the Court **GRANTS** Petitioner-Plaintiff's Motion for a Temporary Restraining Order.

Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In this case, in light of the minimal risk of harm to the government, the Court determines that security bond is not required.

**IV.    CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner-Plaintiff's Ex Parte Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents-Defendants are **ORDERED** to immediately release Petitioner-Plaintiff from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner-Plaintiff without notice and a pre-deprivation hearing before a neutral decisionmaker. This Order shall remain in effect until Tuesday, August 12, 2025, at 5:00 p.m.

7

The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order **SHALL** be served on Respondents-Defendants such that they receive actual notice as soon as practicable, and Petitioner-Plaintiff shall file proof of such service by no later than Wednesday, July 30, 2025, at 5:00 p.m.  Parties must appear for case management conference on Thursday, July 31, 2025, at 2:30 p.m. via videoconference during which Respondents shall provide a status report confirming Petitioner-Plaintiff's release.

Respondents-Defendants are **ORDERED TO SHOW CAUSE** in-person at a hearing on Tuesday, August 12, 2025, at 2:00 p.m. why a preliminary injunction should not issue. Respondents-Defendants shall file a response to Petitioner-Plaintiff's motion by no later than Tuesday, August 5, 2025, at 5:00 p.m.  No reply shall be filed.

This Order resolves ECF 3 and 4.

**IT IS SO ORDERED.**

Dated: July 29, 2025

TRINA L. THOMPSON
United States District Judge