UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JORGE WILLY VALERA
CHUQUILLANQUI,

            Plaintiff,

        v.

POLLY KAISER, et al.,

            Defendants.

Case No.  25-cv-06320-TLT

**ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION**

Respondents-Defendants Polly Kaiser, Acting Field Office Director of the San Francisco Immigration Customs Enforcement ("ICE") Office, Todd Lyons, Acting Director of ICE, Kristi Noem, Secretary of Homeland Security, and Pamela Bondi, Attorney General of the United States, seek absolute authority to arrest and detain noncitizens already living in the United States.  This conquest has resulted in a pattern of seizures that occur at courthouses—arrests that occur mere minutes after the completion of his routine immigration proceedings.  Petitioner-Plaintiff Jorge Willy Valera Chuquillanqui, an asylum seeker who has suffered no criminal history since arriving in the United States, was one of those individuals seized.  The Court finds that Petitioner-Plaintiff must be afforded due process.

Pending before the Court is Petitioner-Plaintiff Jorge Willy Valera Chuquillanqui's motion for preliminary injunction and to enjoin Respondents-Defendants from arresting Petitioner-Plaintiff.  ECF 4.  Respondents-Defendants filed a timely opposition.  ECF 16.  Petitioner-Plaintiff filed a timely reply.  ECF 20.  The Court heard oral argument on August 23, 2025.

Having considered the parties' briefs, the relevant legal authority, oral argument, and for the reasons below, the Court **GRANTS** Petitioner-Plaintiff's motion for preliminary injunction.

## I. BACKGROUND

Petitioner-Plaintiff has no criminal history and, on December 20, 2022, fled Peru to seek asylum in the United States. ECF 1 ¶ 1; ECF 16-1, Razalan Decl. ¶ 4. On the same day, Customs and Border Protection ("CBP") officers detained and released Petitioner-Plaintiff into the United States. ECF 1 ¶ 1; ECF 16-1 ¶ 4. Petitioner-Plaintiff was released pursuant to 8 U.S.C. § 1226(a), and the government initiated removal proceedings pursuant to 8 U.S.C. § 1229. ECF 22 at 3.

Since Petitioner-Plaintiff has arrived in the United States, Petitioner-Plaintiff has become an active member of his church obligation, attends church every Sunday, and is available to church members to volunteer and provide support. ECF 22 at 2. Petitioner-Plaintiff also helps care for his two siblings' children by caring for the children during the weekends. *Id*. Petitioner-Plaintiff has also offered logistical support to his siblings, including assisting his sister successful obtain asylum in immigration court proceedings. *Id*. Petitioner-Plaintiff is employed as a janitor and dishwasher for a catering service. *Id*. at 3.

On March 27, 2023, Petitioner-Plaintiff was placed in removal proceedings as "an alien present without admission or parole" and charged with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). ECF 16-1 ¶ 5. Petitioner-Plaintiff received a Notice to Appear, DHS Form I-862 (6/22), that indicated that Petitioner-Plaintiff was "an alien present in the United States who has not been admitted or paroled." ECF 22 at 3. Petitioner-Plaintiff was originally set to appear in immigration court on October 1, 2024. *Id*. ¶ 6. However, the hearing was continued to July 25, 2025 because the immigration judge ("IJ") provided time for Petitioner-Plaintiff to respond to the government's motion to dismiss removal proceedings. *Id* ¶ 7.

Petitioner-Plaintiff attended the July 25, 2025 hearing in person and, at the hearing, the government proceeded with their motion to dismiss removal proceedings against Petitioner-Plaintiff. ECF 1 ¶ 2. The Immigration Judge ("IJ") set a further hearing on October 17, 2025. *Id*. Petitioner-Plaintiff is currently preparing a written opposition to the government's motion to dismiss. ECF 22 at 4.

Minutes after the hearing concluded, Department of Homeland Security ("DHS") agents arrested Petitioner-Plaintiff. ECF 1 ¶ 3. Petitioner-Plaintiff began to experience pain in the left

half of his body, which was paralyzed from a medical incident that occurred the year before.  *Id.* Petitioner-Plaintiff suffers from Bell's Palsy.  *Id.* ¶ 67.  The agents called an ambulance to take Petitioner-Plaintiff to the hospital.  *Id.*  The following morning, Petitioner-Plaintiff was taken into custody. *Id.*

On July 28, 2025, Petitioner-Plaintiff filed a petition for writ of habeas corpus.  ECF 1.  On July 29, 2025, Petitioner-Plaintiff filed an *ex parte* motion for temporary restraining order.  ECF 3–4.

On July 29, 2025, the Court granted Petitioner-Plaintiff's *ex parte* motion for temporary restraining order and, to maintain the status quo, ordered Respondents-Defendants to immediately release Petitioner-Plaintiff from Respondents-Defendants' custody and enjoined Respondents-Defendants from re-detaining Petitioner-Plaintiff without notice and a pre-deprivation hearing before a neutral decisionmaker.  ECF 6 at 7. Although Petitioner-Plaintiff had been in San Francisco at the time the petition for writ of habeas corpus was filed, Petitioner-Plaintiff was flown to Arizona by the time the *ex parte* motion for temporary restraining order was filed.  ECF 4-4, Weiner Decl. ¶¶ 13–16.  The Court also ordered Respondents-Defendants to show cause as to why a preliminary injunction should not issue.  *Id.* at 8.

On August 19, 2025, Respondents-Defendants filed an opposition to Petitioner-Plaintiff's motion for preliminary injunction.  ECF 16.  On August 25, 2025, Petitioner-Plaintiff filed a reply.  ECF 20.  On September 16, 2025, the Court provided questions in advance of the scheduled September 23, 2025 hearing.  ECF 21.  Petitioner-Plaintiff provided answers to the Court's questions on September 18, 2025.  ECF 22.  On September 19, 2025, Respondents-Defendants indicated that they needed additional time to gather information and will provide responses to the Court's questions during oral argument.  ECF 24.

The Court heard oral argument on September 23, 2025.  ECF 15.

At the end of oral argument, the Court found that there was good cause to extend the TRO until October 7, 2025.  The Court found good cause considering that Petitioner-Plaintiff has abided by the conditions of his release, and there was no indication that Petitioner-Plaintiff has failed to appear for scheduled appearance in the San Francisco immigration court.  There was also

1    no indication that Petitioner-Plaintiff either failed to comply with his immigration court

2    requirements or was a flight risk.  The Court also sought to expedite its decision on the motion for

3    preliminary injunction by sending out questions in advance; questions to which the Respondents-

4    Defendants did not provide answers until the hearing.  The Court required time to consider

5    Respondents-Defendants' answers.

6    **II.    LEGAL STANDARDS**

7        **A.    Preliminary Injunction**

8        "A plaintiff seeking a preliminary injunction must establish that [1] [s]he is likely to

9    succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of

10   preliminary relief, [3] that the balance of equities tips in h[er] favor, and [4] that an injunction is in

11   the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff

12   can only show that there are 'serious questions going to the merits'—a lesser showing than

13   likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of

14   hardships tips *sharply* in the plaintiff's favor and the other two *Winter* factors are satisfied.'"  *All.*

15   *for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v.*

16   *Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).  The final two factors "merge when the

17   Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

18       **B.    Due Process**

19       The Due Process Clause of the Fifth Amendment to the United States Constitution states

20   that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."

21   U.S. Const. amend. V.  "It is settled law that the Due Process clause applies to noncitizens within

22   the United States 'whether their presence here is lawful, unlawful, temporary, or permanent.'"

23   *Paula Andrea Salcedo Aceros v. Polly Kaiser et al.*, No. 25-cv-5624-EMC, 2025 WL 2637503, at

24   *5 (N.D. Cal. Sept. 12, 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

25       "The Due Process Clause 'protects individuals against two types of government action':

26   violations of substantive due process and procedural due process."  *United States v. Quintero*, 995

27   F.3d 1044, 1051 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

28   "[S]ubstantive due process prevents the government from engaging in conduct that shocks the

United States District Court
Northern District of California

conscience, or interferes with rights implicit in the concept of ordered liberty." *Quintero*, 995 F.3d at 1051 (internal quotation omitted). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Id*. at 1051–52 (internal quotation omitted).

## III.    DISCUSSION OF IMMIGRATION STATUTES AND PROCESS

### A.    "Section 240" Removal Proceedings

In general, a noncitizen may be found to be "inadmissible" if they have never been legally admitted to the United States, whereas a noncitizen may be found "deportable" if they were previously admitted but then committed a deportable offense. *See Barton v. Barr*, 590 U.S. 222, 234 (2020). The "umbrella statutory term for being inadmissible or deportable is 'removable.'" *Id.* at 226.

Under the standard process for removing inadmissible noncitizens, referred to as "Section 240" or "Section 1229(a)," removal proceedings begin when DHS files a Notice to Appear in immigration court, which includes the charges of removability against the noncitizen. 8 C.F.R. §§ 1003.13, 1003.14(a), 1003.18. Immigration courts have jurisdiction over removal proceedings. *Karingithi v. Whitaker*, 913 F.3d 1158, 1158–60 (9th Cir. 2019). An IJ will then issue a decision on the merits including a grant or denial of any application for relief from removal and a finding of removability. *See* 8 U.S.C. § 1229(a)(c). The IJ's decision constitutes a final removal order unless a party appeals. *Id.* at (a)(c)(1)(A), (c)(5).

Both the noncitizen and DHS may appeal the IJ's decision to the BIA. 8 C.F.R. §§ 1240.15, 1003.1(b). If the BIA affirms the order of removal, the noncitizen may seek judicial review of that decision by filing a PFR in the United States Court of Appeals in the judicial circuit in which the immigration court proceedings occurred. 8 U.S.C. § 1252.

After a final removal order, noncitizens may also file a motion to reopen proceedings before the BIA if there is new and relevant evidence. 8 U.S.C. § 1229(a)(c)(7); *Singh v. Garland*, 124 F.4th 690, 697 (9th Cir. 2024).

### B.    Inadmissibility Under 8 U.S.C. § 1182(a)(6)(A)(i)

8 U.S.C. § 1182(a) enumerates several grounds for inadmissibility that render a noncitizen

United States District Court
Northern District of California

1  "ineligible to receive visas and ineligible to be admitted to the United States."

2        Section 1182(a)(6)(A) describes "[noncitizens] present without admission or parole."

3  "[A] [noncitizen] present in the United States without being admitted or paroled, or who arrives in

4  the United States at any time or place other than as designated by the Attorney General, is

5  inadmissible."  8 U.S.C. § 1182(a)(6)(A)(i).

6        **C.    Asylum and Convention Against Torture**

7        In general, the application for asylum of a noncitizen arriving in the United States at a port

8  of entry is adjudicated by USCIS after filing a Form I-589, Application for Asylum and for

9  Withholding of Removal.  8 C.F.R. § 208.2(a); 8 C.F.R. § 1208.3.  However, if the noncitizen has

10  been served with a Notice to Appear and has Section 240 removal proceedings pending before an

11  immigration court, the IJ will adjudicate that noncitizen's application for asylum instead.  8 C.F.R.

12  208.2(b); 8 C.F.R. § 1240.11(c).  A further exception exists for UAC.  Depending on when the

13  application is filed and whether the noncitizen's UAC designation is still valid, USCIS may retain

14  initial jurisdiction over their asylum application even if removal proceedings are pending.  *See* 8

15  U.S.C. § 1158(b)(3)(c).

16        If USCIS has initial jurisdiction, an asylum officer may approve, deny, refer to

17  immigration court, or dismiss the application.  8 C.F.R. § 208.14(a)–(c).

18        To be eligible for asylum, a noncitizen bears the burden of demonstrating qualification as a

19  "refugee," meaning that they have a well-founded fear of persecution on account of one of five

20  protected grounds: race, religion, nationality, political opinion, or membership in a particular

21  social group.  8 U.S.C. § 1158(b)(1)(A); *Id.* at § 1101(a)(42)(A).

22        A noncitizen can raise a claim for protection under CAT during removal proceedings.  *See*

23  8 C.F.R. § 1208.16(a).  "[A]n applicant must show 'that it is more likely than not that he or she

24  would be tortured if removed to the proposed country of removal.'"  *Singh v. Bondi*, 130 F.4th

25  1142, 1156 (9th Cir. 2025) (citing 8 C.F.R. § 1208.16(c)(2)).

26        **D.    Arrest and Detention of Noncitizens in Removal Proceedings Under 8 U.S.C. § 1226**

27        Section 1226 "provides the general process for arresting and detaining [noncitizens] who

28

6

1    are present in the United States and eligible for removal." *Rodriguez Diaz*, 53 F.4th at 1196.

2    Section 1226 "applies to [noncitizens] already present in the United States." *Jennings v.*

3    *Rodriguez*, 583 U.S. 281, 303 (2018).

4        **i.**    **Discretionary Detention Under 8 U.S.C. § 1226(a)**

5        "Section 1226(a) sets out the default rule," and allows arrest and detention of a noncitizen

6    "pending a decision on whether the [noncitizen] is to be removed from the United States."

7    *Jennings*, 583 U.S. at 288; 8 U.S.C. § 1226(a).

8        "On a warrant issued by the Attorney General, [a] [noncitizen] may be arrested and

9    detained pending a decision on whether the [noncitizen] is to be removed from the United States.

10   Except as provided in subsection (c) and pending such decision, the Attorney General— (1) may

11   continue to detain the arrested [noncitizen]; and (2) may release the [noncitizen] on— (A) bond of

12   at least $1,500 . . . (B) conditional parole." 8 U.S.C. § 1226(a).

13       When a noncitizen is first apprehended under 8 U.S.C. § 1226(a), an ICE officer makes an

14   initial custody determination. 8 C.F.R. § 236.1(c)(8). "The [noncitizen] will be released if he

15   'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to

16   property or persons, and that the [noncitizen] is likely to appear for any future

17   proceeding.'" *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).

18       If the initial determination results in detention, a noncitizen detained under 8 U.S.C. §

19   1226(a) may request a bond hearing before their removal order is final. 8 C.F.R. § 236(1)(d)(1).

20   At this initial bond hearing, the burden is on the noncitizen to establish by a preponderance of the

21   evidence that he or she does not pose a danger and is not a flight risk. *Rodriguez Diaz*, 53 F.4th at

22   1197.

23       Section 1226(a)'s implementing regulations allow noncitizens detained under 8 U.S.C §

24   1226(a) to request subsequent bond determinations "in writing," which "shall be considered only

25   upon a showing that the [noncitizen's] circumstances have changed materially since the prior

26   redetermination." 8 C.F.R. § 1003.19(e).

27       Adverse bond decisions can be appealed to the BIA. *Rodriguez Diaz*, 53 F.4th at 1197; 8

28   C.F.R. § 1003.19(f).

United States District Court
Northern District of California

### ii.    Revocation of Bond or Parole Under 8 U.S.C. § 1226(b)

If a noncitizen has been released on bond, "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the [noncitizen] under the original warrant, and detain the [noncitizen]."  8 U.S.C. § 1226(b).  In the past, DHS has asserted that this authority to re-arrest a noncitizen released on bond is limited.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) ("DHS generally only re-arrests [a] [noncitizen] pursuant to § 1226(b) after a material change in circumstances."), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

### iii.    Mandatory Detention Under 8 U.S.C. § 1226(c)

Section 1226(c) "carves out a statutory category of [noncitizens] who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289.  Under § 1226(c), the Attorney General "shall take into custody" a noncitizen who "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.*; 8 U.S.C. § 1226(c).  Noncitizens detained under 8 U.S.C. § 1226(c) are not eligible for release on bond.

### E.    Detention of "Applicants for Admission" Under 8 U.S.C. § 1225

As opposed to Section 1226, which "applies to [noncitizens] already present in the United States," *Jennings*, 583 U.S. at 303, Section 1225 applies to "applicants for admission." *Rodriguez Diaz*, 53 F.4th at 1197 (Section 1225(b) "supplement[s] § 1226's detention scheme.").  Section 1225 defines "applicant for admission" as "[a] [noncitizen] present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a] [noncitizen] who is brought to the United States after having been interdicted in international or United States waters)."  8 U.S.C. § 1225(a).  Both Section 1225(b)(1) and Section 1225(b)(2) authorize detention for certain "applicant[s] for admission."  8 U.S.C. § 1225(b).

8 U.S.C. § 1225(b)(1) "applies to [noncitizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287.

8 U.S.C. § 1225(b)(2) is a "catchall" provision that applies to most other "applicant[s] for admission." *Id.* at 281.  "[A] [noncitizen] who tries to enter the country illegally is treated as an

8

1    'applicant for admission,'" whereas "[a] [noncitizen] who is detained shortly after unlawful entry

2    cannot be said to have 'effected an entry.'"  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S.

3    103, 140 (2020).

4         Noncitizens detained under 8 U.S.C. § 1225(b)(2) are subject to mandatory detention.  8

5    U.S.C. § 1225(b)(2)(A) ("[I]f the examining immigration officer determines that [a] [noncitizen]

6    seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall*

7    be detained for a proceeding.") (emphasis added).

8         Noncitizens under both subsections, 8 U.S.C. § 1225(b)(1) and (b)(2), are not eligible for

9    bond hearings and may be released only on temporary, discretionary parole "for urgent

10   humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).  This parole "shall

11   not be regarded as an admission," and "when the purposes of such parole . . . have been served the

12   [noncitizen] shall forthwith return or be returned to the custody from which he was paroled."  *Id.*

## IV.    DISCUSSION

14        Petitioner-Plaintiff argues that he (A) will likely succeed on the merits; (B) will suffer

15   irreparable harm absent relief; and (C) the balance of inequities and public interest weigh in favor

16   of injunctive relief.  ECF 4 at 12–19.

### A.    Petitioner-Plaintiff will Likely Succeed on the Merits of his Procedural Due Process Claim

19        Petitioner-Plaintiff argues that he is likely to succeed on the merits of his procedural due

20   process and substantive due process claims.  ECF 4 at 12–18.  Regarding procedural due process,

21   Petitioner-Plaintiff argues that he has an ongoing liberty interest under *Mathews v. Eldridge*, 424

22   U.S. 319 (1976) because he was conditionally released from immigration custody.  ECF 4 at 14–

23   15.  Respondents-Defendants argue that the Supreme Court has not applied *Mathews* to

24   noncitizens' due process claims.  ECF 16 at 8.

25        "[D]ue process is flexible and calls for such procedural protections as the particular

26   situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Indeed, the Ninth Circuit

27   has held that "[i]mmigration proceedings must provide the procedural due process protections

28   guaranteed by the Fifth Amendment."  *Najjar v. Lunch*, 630 Fed. App'x 724, 724 (9th Cir. 2016)

United States District Court
Northern District of California

1    (quoting *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012)).  "[L]ast minute orders of

2    removal to a country may violate due process if an immigrant was not provided an opportunity to

3    address his fear of persecution in that country."  *Id*.  Therefore, consistent with other Courts in this

4    district, the Court shall determine "whether the administrative procedures provided here are

5    constitutionally sufficient" by considering the following *Mathews* factors:

6            First, the private interest that will be affected by the official action;
        second, the risk of an erroneous deprivation of such interest through
7        the procedures used, and the probable value, if any, of additional or
        substitute procedural safeguards; and finally, the Government's
8        interest, including the function involved and the fiscal and
        administrative burdens that the additional or substitute procedural
9        requirement would entail.

10   *Mathews*, 424 U.S. at 334; *see also Carolina Ortiz Calderon v. Kaiser, et al*, No. 25-cv-6695,

11   2025 WL 2430609, at \*3 (N.D. Cal. Aug. 22, 2025); *Juan Edelmar Alva Alva v. Kaiser et al*, No.

12   25-cv-6676, 2025 WL 2419262, at \*4 (N.D. Cal. Aug. 21, 2025); *Frescia Garro Pinchi v. Noem*,

13   No. 25-cv-5632, 2025 WL 2084921, at \*3 (N.D. Cal. July 24, 2025).

14           The Court considers each of the *Mathews* factors in turn.

15           **i.    Petitioner-Plaintiff has a private interest in remaining out of custody**

16           Petitioner-Plaintiff argues that he has a profound private interest given the potential

17   deprivation of physical liberty.  ECF 4 at 15–16.  Respondents-Defendants argue that noncitizens

18   subject to expedited removal cannot assert a protected property or liberty interest in additional

19   procedures not provided in 8 U.S.C. § 1225, the expedited removal statute.  ECF 16 at 9.

20   Respondents-Defendants assert that Petitioner-Plaintiff was neither admitted, paroled, or lawfully

21   present, and that Petitioner-Plaintiff has not shown how his mandatory detention or transfer would

22   interfere with the ability to present his case or access counsel more than any other similarly

23   situated detainee.  *Id*. at 10–11.  Respondents-Defendants also argue that DHS may perform

24   discretionary detention pursuant to 8 USC §1226(a) or mandatory detention under 8 USC §

25   1225(b).  *Id*.  In reply, Petitioner-Plaintiff argues that he is only subject to discretionary detention

26   under §1226.  ECF 20 at 4.

27           Here, Petitioner-Plaintiff has a private interest in remaining out of custody.  *See Pinchi*,

28   2025 WL 2084921, at \*4.  "Freedom from imprisonment—from government custody, detention,

United States District Court
Northern District of California

1 or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause]

2 protects." *Zadvydas*, 533 U.S. at 690.  Petitioner-Plaintiff was released pursuant to 8 U.S.C. §

3 1226(a) and has been out of custody for approximately the past two years and seven months, since

4 December 20, 2022.  ECF 1 ¶ 1; ECF 22 at 2–3.  His liberty interest has crystalized into a

5 substantial private interest over time.  *See Guillermo M.R. v. Kaiser et al*, No. 25-cv-5436, 2025

6 WL 1983677, at *7 (N.D. Cal. July 16, 2025) ("A protectable liberty interest can crystallize even

7 where an individual was released from prison in error, where the individual reasonably thought the

8 release was deliberate and lawful.") (internal quotation omitted) (cleaned up).  Petitioner-Plaintiff

9 has a private interest in remaining out of custody, which would allow him to live at home, be with

10 his family, serve his community, and obtain necessary medical care.  ECF 1 ¶¶ 6, 51; ECF 22at 2–

11 3.

12        Although Respondents-Defendants argue that DHS may detain Petitioner-Plaintiff under

13 both § 1226(a)'s discretionary detention authority and § 1225(b)'s mandatory detention authority,

14 the IJ has not yet ruled on the government's motion to place Petitioner-Plaintiff in § 1225

15 proceedings.  *Id*. ¶ 2.  Petitioner-Plaintiff was released pursuant to § 1226(a) and immigration

16 proceedings have remained under § 1226—not § 1225.  *See Rodriguez-Diaz*, No. 25-cv-5071, at

17 20 (pending order granting motion for preliminary injunction) ("Federal courts have long

18 interpreted § 1226(a) as being the 'default rule' governing noncitizens with pending removal

19 proceedings, even if they previously entered without being admitted or inspected."). Petitioner-

20 Plaintiff's Notice to Appear, DHS Form I-862 (6/22), also recognizes that Petitioner-Plaintiff is

21 "an alien present in the United States who has not been admitted or paroled"—not as "an arriving

22 alien." ECF 22 at 3.  Thus, applying § 1225(b) at this stage would be inconsistent with the current

23 procedure of Petitioner-Plaintiff's immigration case.

24        Moreover, several courts have already rejected Respondents-Defendants' attempt to

25 broaden the government's authority to detain noncitizens already living in the United States under

26 both § 1225(b) and § 1226(a).  *See Paula Andrea Salcedo Aceros v. Polly Kaiser et al*., No. 25-cv-

27 5624-EMC, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Lopez Benitez v. Francis et al.*, No. 25-

28 cv-5937, 2025 WL 2371588, (S.D.N.Y Aug. 13, 2025); *Martinez v. Hyde*, No. 25-cv-11613, 2025

11

WL 2084238 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Rodriguez v. Bostock*, No. 3:25-cv-5240, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). Indeed, Respondents-Defendants' argument that noncitizens living in the United States qualify as those "seeking admission" under § 1225(b) is inconsistent with the text of § 1225.

8 U.S.C. § 1225(b)(2)(A) provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

In interpreting this statute, courts have consistently held that "seeking admission" does not apply to noncitizens, like Petitioner-Plaintiff, who have been living in the United States. *See Aceros*, 2025 WL 2637503, at *8–12; *Lopez Benitez*, 2025 WL 2371588, at *5–9; *Martinez*, 2025 WL 2084238, at * 8; *Gomes*, 2025 WL 1869299, at *5–8; *Rodriguez*, 779 F. Supp. 3d at 1258–1261. "[O]ne of the most basic interpretive canons . . . [is that a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation omitted). "If, as the Government argues, all applicants for admission are deemed to be 'seeking admission' for as long as they remain applicants, then the phrase 'seeking admission' would add nothing to the provision" and violate the rule against surplusage. *Aceros*, 2025 WL 2637503, at *9. The interpretation "would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens." *Rodriguez*, 2025 WL 1193850, at *1258. Moreover, "8 C.F.R. § 235.3 describes [§] 1225(b)(2) as applying to any *arriving alien* who appears to the inspecting officer to be inadmissible." *Aceros*, 2025 WL 2637503, at *10 (cleaned up). Petitioner-Plaintiff here is not an "arriving alien" pursuant to § 1225(b)—he has been living in the United States since December 20, 2022.

Respondents-Defendants' attempt to treat arriving noncitizens the same as those already in the United States is also inconsistent with Congress' recent amendment to the immigration

scheme. This year, Congress amended § 1226 to carve "out an additional category of noncitizens from Section 1226(a)'s discretionary detention scheme." *Rodriguez*, 779 F. Supp. 3d at 1259. Under the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), this new category of noncitizens subject to mandatory detention under Section 1226(c) "includes noncitizens who are (1) inadmissible under 1182(6)(A) [present without admission or parole], (6)(C) [misrepresentation], or (7)(A) [lack of proper documentation] *and* (2) have been charged with one of certain enumerated crimes." *Aceros*, at *10 (citation omitted) (emphasis added). This recent amendment was made "against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens *already* residing in the country." *Rodriguez*, 779 F. Supp. 3d at 1259 (emphasis added). "If Congress amended Section 1226 to create mandatory detention for certain inadmissible noncitizens, it follows that those noncitizens were not already subject to mandatory detention." *Aceros*, 2025 WL 2637503, at *10.

Although Respondents-Defendants may argue that, in *Matter of Jonathan Javier Yajure Hurtado*, 29I & N Dec. 216 (BIA 2025), the BIA recently interpreted § 1225 to allow mandatory detention for all inadmissible noncitizens in the United States, the *Hurtado* decision is entitled to little deference for the reasons discussed above. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."). The BIA's *Hurtado* decision is also inconsistent with at least "three recent, albeit unpublished, decisions by the [BIA], all clearly holding that the detention of a non-citizen arrested within the United States is governed under section 1226, rather than section 1225." *Martinez v. Hyde*, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025). Indeed, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). "In the latter instance[,] the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "Against this backdrop, the Court finds it particularly doubtful

United States District Court
Northern District of California

that Congress intended section 1225(b)(2)(A) to apply to non-citizens, like Petitioner, detained while 'present in the United States.'" *Martinez*, 2025 WL 2084238, at *8.

During oral argument, the Respondents-Defendants for the first time argues that § 1225(a)(3)'s "applicants for admission or otherwise seeking admission" language extends § 1225's reach to all applicants. The Court disagrees with this interpretation. First, § 1225(a)(3) governs the "inspection"—not detention—protocol. *See* 8 U.S.C. § 1225(a)(3). Second, Respondents-Defendants fail to provide any binding or persuasive caselaw to support their interpretation. Finally, as discussed above, Respondents-Defendants' "interpretation that mandatory detention applies to all 'applicants for admission' would make the 'seeking admission' language entirely superfluous." *See Vazquez v. Bostock*, 25-cv-5240, 2025 WL 2782499, at * (W.D. Wash. Sept. 30, 2025); *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432, (2023) ("[E]very clause and word of a statute should have meaning.")

Accordingly, the Court finds that Petitioner-Plaintiff will likely succeed on the merits of showing that he has a private interest in remaining out of custody.

### ii. There is a high risk of erroneous deprivation and probable value of procedural safeguards

Petitioner-Plaintiff argues that the risk of erroneous deprivation of liberty is high because he has not received any bond or custody redetermination hearing. ECF 4 at 16. Petitioner-Plaintiff argues that his re-detention is motivated by Respondents-Defendants' new arrest quotas and practice of leveraging detention to secure dismissal under INA Section 240. *Id.* Respondents-Defendants do not address Petitioner-Plaintiff's arguments regarding the risk of erroneous deprivation and value of procedural safeguards under *Mathews*. See ECF 16.

Here, without a hearing before a neutral decisionmaker to determine whether Petitioner-Plaintiff is a flight risk or danger to the community, "the risk of an erroneous deprivation of liberty is high." *Alva Alva*, 2025 WL 2419262, at *5 (cleaned up); *see also Rajnish v. Jennings*, No. 20-cv-07819, 2020 WL 7626414, at *8 (N.D. Cal. Dec. 22, 2020) (holding Petitioner-Plaintiff "was constitutionally entitled to a bond determination at which the burden was on the government to prove that he was a flight risk or danger to the community by clear and convincing evidence.").

United States District Court
Northern District of California

14

1    Respondents-Defendants have offered no evidence to show that Petitioner-Plaintiff is a flight risk

2    or danger to the community.  Indeed, Petitioner-Plaintiff has attended every immigration

3    proceeding and suffers no criminal history.  ECF 1 ¶ 1.  He has never been determined to be a

4    flight risk or danger to the community.  ECF 1 ¶ 64.

5        Accordingly, the Court finds that Petitioner-Plaintiff will likely succeed on the merits of

6    showing that the risk of erroneous deprivation and probable value of procedural safeguards are

7    high.

8                    iii.    The government has minimal interest in detaining Petitioner-Plaintiff

9        Petitioner-Plaintiff argues that the government's interest in detaining him without notice

10   and a hearing is minimal.  ECF 4 at 17.  Respondents-Defendants do not address Petitioner-

11   Plaintiff's arguments regarding the government's interest under *Mathews*.  ECF 16.

12       As discussed above, Petitioner-Plaintiff has no criminal history, attended every

13   immigration proceeding, and has not been determined to be a flight risk or danger to the

14   community.  ECF 1 ¶¶ 1, 64.  The government does not argue that any of these circumstances have

15   changed.  "Nor can the government suggest that the cost of providing such protections would be

16   fiscally or administratively onerous.  If the government wishes to detain [Petitioner-Plaintiff], it

17   need only provide a hearing before a neutral decisionmaker."  *Pinchi*, 2025 WL 2084921 at *6;

18   *see also Guillermo*, 2025 WL 1983677, at *20 ("[T]he concept that an individual who is not

19   subject to detention may request custody redetermination from an IJ is not novel.").  The cost of

20   such proceedings is minimal.  *Pinchai*, 2025 WL 2084921 at *6.

21       Accordingly, the Court finds that Petitioner-Plaintiff will likely succeed on the merits of

22   showing that the government does not have an interest in detaining Petitioner-Plaintiff.

23                                    *      *      *

24       Petitioner-Plaintiff suffers no criminal history, has been released from ICE custody for

25   approximately two years and seven months, and has attended every required immigration court

26   proceeding.  He is employed, active in his church, and assists his siblings with childcare.

27   Respondents-Defendants make no claim that Petitioner-Plaintiff is either a flight risk or danger to

28   the community.  At this stage of the proceedings, the Court finds that Petitioner-Plaintiff will

United States District Court
Northern District of California

15

1    likely succeed on the merits of his procedural due process claim.

2         "[B]cease granting a preliminary injunction enjoining Respondents-Defendants from

3    detaining Petitioner-Plaintiff without a notice and a pre-deprivation hearing before a neutral

4    decisionmaker averts 'the threat of any imminent deprivation of [his] substantive due process

5    rights,'" the Court need not address Petitioner-Plaintiff's substantive due process claim. *See*

6    *Paula Sofia Ramirez Clavijo v. Polly Kaiser, et al*., No. 25-cv-6248, at *5 (N.D. Cal. Aug. 21,

7    2025); *see also Guillermo*, 2025 WL 1983677, at *10 n.7.

8         **B.    Petitioner-Plaintiff will Suffer Irreparable Harm Absent Preliminary Injunction**

9         Petitioner-Plaintiff argues that he will suffer irreparable injury absent relief each day that

10   the government violates Petitioner-Plaintiff's Fifth Amendment rights.  ECF 4 at 18.  Petitioner-

11   Plaintiff also argues that an arrest and detention would cause him to be torn from his family and

12   community, and suffer pain due to conditions of confinement. *Id*. at 19.  Respondent argues that

13   Petitioner-Plaintiff's assertion that conditions of confinement causes Petitioner-Plaintiff pain is

14   unsupported.  ECF 16 at 11.  Respondent also argues that Petitioner-Plaintiff's detention is lawful

15   and deprivation of physical liberty is inherent in detention. *Id*. at 11–12.

16        As discussed above, the Court finds that Petitioner-Plaintiff has a private interest in his

17   liberty and continued release. "It is well established that the deprivation of constitutional rights

18   unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir.

19   2017) (internal quotations omitted).  Moreover, Petitioner-Plaintiff risks being separated from his

20   family. *See Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013) ("[The right to live with and

21   not be separated from one's immediate family is a right that ranks high among the interests of the

22   individual.") (cleaned up).  Petitioner-Plaintiff also risks being subjected to the "subpar medical

23   and psychiatric care in ICE detention facilities" if detained. *Hernandez*, 872 F.3d at 995.  Indeed,

24   there are concrete harms in immigration detention. *See id.* ("The University of California, Irvine

25   School of Law's Immigrant Rights Clinic relates the story of a detainee who was forced to miss

26   her murdered mother's funeral because she could not afford a $9,000 bond and details the abuse

27   another detainee suffered at the hands of guards and detainees, resulting in mental health

28   problems.").

United States District Court
Northern District of California

16

Accordingly, the Court finds that Petitioner-Plaintiff will suffer irreparable harm absent a preliminary injunction.

**C.    The Balance of Equities and Public Interest Weigh in Favor of a Preliminary Injunction**

Petitioner-Plaintiff argues that the balance of equities weigh in favor of granting relief because Petitioner-Plaintiff faces irreparable injury.  ECF 4 at 19.  Petitioner-Plaintiff also argues that the public has an interest in preventing a violation of Petitioner-Plaintiff's constitutional rights.  *Id*.  Respondents-Defendants argue that the government has an interest in enforcement of its immigration laws and would suffer injury if enjoined from enforcement.  ECF 16 at 12–13.  Respondents-Defendants also argues that preliminary injunction is an extraordinary remedy and Petitioner-Plaintiff has not shown that he will likely succeed on the merits of his claims. *Id*. at 13.

Although the government has an interest in enforcing its immigration laws, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020) (internal quotations and citation omitted).  Petitioner-Plaintiff here will likely succeed on the merits of his procedural due process claim and faces irreparable harm if Respondents-Defendants are not enjoined.  Respondents-Defendants, on the other hand, only risk a "short delay in detaining Petitioner-Plaintiff if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight." *Alva Alva*, 2025 WL 2419262, at *7.

Accordingly, the Court finds that the balance of equities and the public interest weigh in favor of granting a preliminary injunction.

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Petitioner-Plaintiff's motion for preliminary injunction.

Petitioner-Plaintiff has demonstrated that he will likely succeed on the merits of his procedural due process claim.  Petitioner-Plaintiff will likely succeed in showing that he has a private interest in remaining out of custody, there is a high risk of erroneous deprivation and

17

1    probable value of procedural safeguards, and that the Respondents-Defendants have minimal

2    interest in detaining Petitioner-Plaintiff.

3         Petitioner-Plaintiff will also suffer irreparable harm absent preliminary relief.  He risks

4    being separated from his family and community, and being subjected to ICE's inadequate, subpar

5    medical care.  The public has an interest in preventing constitutional violations, and Respondents-

6    Defendants only risk minimal harm in delaying Petitioner-Plaintiff's detention.

7         Petitioner-Plaintiff's continued release is required to maintain the status quo.

8    Respondents-Defendants may not re-detain Petitioner-Plaintiff during the pendency of these

9    proceedings without notice and without providing Petitioner-Plaintiff with a hearing before a

10   neutral immigration judge.  Respondents-Defendants are enjoined from transferring Petitioner-

11   Plaintiff out of this district or deporting him pending these proceedings.

12        A case management conference is set for October 9, 2025.

13        This Order resolves ECF 4.

14        IT IS SO ORDERED.

15   Dated: October 1, 2025

16                                                    _____
                                                     TRINA L. THOMPSON
17                                                   United States District Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California