UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JORGE WILLY VALERA CHUQUILLANQUI,

Plaintiff,

v.

POLLY KAISER, et al.,

Defendants.

Case No. 25-cv-06320-TLT

**ORDER RESOLVING PETITION FOR WRIT OF HABEAS CORPUS AND ENTERING PERMANENT INJUNCTION**

Re: Dkt. Nos. 1, 38, 41

Before the Court is Petitioner Jorge Willy Valera Chuqillanqui's ("Petitioner-Plaintiff") Petition for Writ of Habeas Corpus ("Petition"). ECF 1. Petitioner-Plaintiff is an asylum seeker from Peru with no criminal history. ECF 26 at 2. After being detained by Customs and Border Patrol ("CBP") officers in December 2022, Petitioner-Plaintiff was released into the United States. ECF 26 at 2. Petitioner-Plaintiff was released under 8 U.S.C. § 1226(a) and the government initiated removal proceedings pursuant to 8 U.S.C. § 1229. ECF 26 at 2. Since fleeing Peru several years ago, Petitioner-Plaintiff has built a life in the United States. He is active in his church, has family relationships with his siblings and their children, and is employed. ECF 26 at 2.

Petitioner-Plaintiff filed the Petition on July 28, 2025, after Department of Homeland Security ("DHS") agents arrested him mere minutes following his in-person appearance at an immigration court hearing. ECF 26 at 2–3. Petitioner-Plaintiff began to experience pain in the left half of his body, which was paralyzed from a medical incident that occurred the year before. ECF 26 at 2–3. Petitioner-Plaintiff suffers from Bell's Palsy. ECF 26 at 3. The agents called an ambulance to take Petitioner-Plaintiff to the hospital. ECF 26 at 3. The following morning, Petitioner-Plaintiff was taken into custody. ECF 26 at 3.

On July 29, 2025, the Court granted Petitioner-Plaintiff's *ex parte* motion for temporary

United States District Court
Northern District of California

restraining order ("TRO"). ECF 26 at 3. The TRO required Respondents-Defendants to immediately release Petitioner-Plaintiff from custody and enjoined them from re-detaining Petitioner-Plaintiff without notice and a pre-deprivation hearing before a neutral decisionmaker. ECF 6 at 7.

The Court later found good cause to extend the TRO and entered a preliminary injunction. ECF 25; ECF 26. The preliminary injunction states that "Petitioner-Plaintiff's continued release is required to maintain the status quo." ECF 26 at 18. It also prevents Respondents-Defendants from re-detaining "Petitioner-Plaintiff during the pendency of these proceedings without notice and without providing Petitioner-Plaintiff with a hearing before a neutral immigration judge." ECF 26 at 18. In addition, "Respondents-Defendants are enjoined from transferring Petitioner-Plaintiff out of this district or deporting him pending these proceedings." ECF 26 at 18.

On December 1, 2025, Respondents-Defendants appealed the Court's Order Granting Preliminary Injunction to the Ninth Circuit. ECF 32. Thereafter, the parties filed a joint stipulation to dismiss the appeal. ECF 39.

On December 17, 2026, Respondents-Defendants filed their response to the Petition in this action. ECF 38. On January 16, 2026, Petitioner-Plaintiff filed a traverse in support of the Petition. ECF 41.

On July 30, 2026, Petitioner-Plaintiff filed a statement of recent decision pursuant to Civil Local Rule 7-3(d), calling the Court's attention to a precedential opinion issued by the Ninth Circuit. ECF 43. In *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) the Ninth Circuit held that non-citizens "present without admission who are apprehended in the interior of the United States" are subject to the discretionary detention regime under 8 U.S.C. § 1226(a), rather than the mandatory detention regime under 8 U.S.C. § 1225(b).

Having considered the Petition, the parties' briefs, the relevant legal authority, and for the reasons below, the Court **DECLARES** that Petitioner-Plaintiff's July 2025 arrest and detention violated his procedural due process rights and **GRANTS** permanent injunctive relief.

United States District Court
Northern District of California

## I. LEGAL STANDARD

### A. Permanent Injunction

For the Court to enter a permanent injunction, "[a] plaintiff must demonstrate: (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Where . . . the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" *Garcia v. Cnty. of Alameda*, 150 F.4th 1224, 1234 (9th Cir. 2025) (citation omitted).

### B. Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is settled law that the Due Process clause applies to noncitizens within the United States 'whether their presence here is lawful, unlawful, temporary, or permanent.'" *Salcedo Aceros v. Kaiser*, No. 25-cv-5624-EMC, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (citations omitted).

"The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Id.* (citation omitted). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Id.* at 1051–52 (citation omitted).

## II. DISCUSSION

Recently, the Ninth Circuit held that non-citizens like Petitioner-Plaintiff, who are apprehended in the interior of the United States, are subject to discretionary detention under 8 U.S.C. § 1226(a), rather than mandatory detention under 8 U.S.C. § 1225(b)(2). *Rodriguez*

*Vazquez*, 2026 WL 2196424, at *3. Accordingly, Respondent-Defendants' argument that Petitioner-Plaintiff is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) is foreclosed by controlling Ninth Circuit case law.[1] ECF 38 at 16–30. In light of the Ninth Circuit's precedential ruling, the Court adopts and reaffirms the findings and conclusions in its Order Granting Preliminary Injunction. ECF 26. Thus, this Order focuses primarily on certain outstanding issues that remain in dispute regarding Petitioner-Plaintiff's procedural due process claim.[2]

First, Respondents-Defendants argue that the *Mathews* factors do not apply to Petitioner-Plaintiff's procedural due process claim. ECF 38 at 27–28. Second, Respondents-Defendants contend that Petitioner-Plaintiff is not entitled to a pre-detention hearing at which the government bears the burden of proof by clear and convincing evidence. ECF 38 at 30–31. Third, Respondents-Defendants assert that any ruling on the Petition must allow the government to detain Petitioner-Plaintiff in order to execute a final order of removal if one is entered against him. ECF 38 at 31–32. The Court addresses each of these issues in turn.

### A. The *Mathews* Factors Apply and Petitioner-Plaintiff Has Successfully Proven That His July 2025 Arrest and Detention Violated Procedural Due Process.

Respondents-Defendants argue that the *Mathews* factors do not apply to Petitioner-Plaintiff's procedural due process claim because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). ECF 38 at 27–28. As explained above, that argument is contravened by binding Ninth Circuit precedent. *Rodriguez Vazquez*, 2026 WL 2196424, at *3. Moreover, even if Petitioner-Plaintiff were subject to mandatory detention (he is not), Courts in this district have recognized that individuals can have a protected liberty interest in maintaining their freedom even if they are subject to mandatory detention. *See Duong v. Kaiser*, No. 25-CV-07598-JST, 2026 WL 2124372, at *5

---

[1] To the extent that Respondents-Defendants intend to initiate expedited removal proceedings against Petitioner-Plaintiff under 8 U.S.C. § 1225(b)(1), there is nothing in the record indicating that they have done so yet. ECF 38.

[2] Because the Court's ruling on Petitioner-Plaintiff's procedural due process claim "affords him all the relief to which he is entitled . . . the Court need not and does not reach" his substantive due process claim. *Bhandohal v. Cruz*, No. 1:26-CV-04833 (EJD), 2026 WL 1954502, at *2 (E.D. Cal. July 6, 2026).

United States District Court
Northern District of California

(N.D. Cal. July 23, 2026) ("Other courts in this district have found that individuals subject to detention under section 1226(c) have a protected interest in remaining at liberty even though section 1226(c) detention is mandatory."). Contrary to Respondents-Defendants' assertions, this liberty interest can include additional procedural protections beyond those that are provided for by statute. *See id.* at *5–9 (granting writ of habeas corpus even though petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c), and enjoining the government from "arresting, detaining, or removing [petitioner] without notice and a hearing to determine whether a material change of circumstances justifies his re-detention"). Thus, Petitioner-Plaintiff has a protected liberty interest in maintaining his freedom and remaining out of custody, and the *Mathews* factors apply to determine what process is due to Petitioner-Plaintiff.[3] *See id.*; *Alva Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *4–6 (N.D. Cal. Aug. 21, 2025).

There are three *Mathews* factors that the Court must consider in determine the process to which Petitioner-Plaintiff is entitled: (1) "the private interest that will be affected by the official action[;]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[;]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Rodriguez Diaz*, 53 F.4th at 1207 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As discussed above, Petitioner-Plaintiff has a substantial private interest in maintaining his freedom and remaining out of custody. *See Bhandohal*, 2026 WL 1954502, at *3; *Alva Alva*, 2025 WL 2419262, at *3–4; *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("[A] protectable liberty interest can crystallize[ ] even where an individual was released from prison in error . . . .") (citation and internal quotation marks omitted). Petitioner-Plaintiff was released into

[3] Although the Ninth Circuit has not decided whether the *Mathews* factors apply to bond hearings in the immigration detention context, it has applied them. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–10 (9th Cir. 2022) ("[W]e assume without deciding that *Mathews* applies . . . ."). Moreover, Courts routinely "appl[y] the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context." *Bhandohal*, 2026 WL 1954502, at *3; *see also Alva Alva*, 2025 WL 2419262, at *4–6; *Duong*, 2026 WL 2124372, at *6–9. The Court does the same here.

the United States pursuant to 8 U.S.C. § 1226(a) on December 20, 2022, and remained out of custody ever since, until the government arrested and detained him in July 2025. ECF 26 at 2–3. Over time, Petitioner-Plaintiff's liberty interest in remaining out of custody has only grown, as he is employed, has family relationships, is active in his church, and can obtain necessary medical care when he is out of custody. ECF 26 at 2–3, 11. Petitioner-Plaintiff's private liberty interest was significant when he was arrested and detained in July 2025.

With respect to the second *Mathews* factor, the risk of erroneous deprivation is high because Petitioner-Plaintiff was arrested and placed into custody without notice or a hearing before a neutral decisionmaker. *See Alva Alva*, 2025 WL 2419262, at *5; *Bhandohal*, 2026 WL 1954502, at *3. Respondents-Defendants have not shown, or even argued, that Petitioner-Plaintiff is a flight risk or a danger to the community. *See Alva Alva*, 2025 WL 2419262, at *5–6; *Bhandohal*, 2026 WL 1954502, at *3. Petitioner-Plaintiff has no criminal history and has attended all of his immigration proceedings. *See Alva Alva*, 2025 WL 2419262, at *6. Thus, the value of a pre-detention hearing before a neutral decisionmaker is high, as it likely would have prevented Respondents-Defendants from arresting and re-detaining Petitioner-Plaintiff in July 2025 without a valid basis. *See Alva Alva*, 2025 WL 2419262, at *5–6; *Bhandohal*, 2026 WL 1954502, at *3. Thus, such a safeguard is necessary to prevent the severe risk of erroneous deprivation that Petitioner-Plaintiff would otherwise face. *See Alva Alva*, 2025 WL 2419262, at *6; *Bhandohal*, 2026 WL 1954502, at *3.

Third, and finally, the government's interest in detaining Petitioner-Plaintiff without providing him with a pre-deprivation hearing before a neutral arbiter is minimal. *See Alva Alva*, 2025 WL 2419262, at *6 ("If the government wishes to detain Petitioner, it need only provide a hearing before a neutral decisionmaker."). As noted above, Petitioner-Plaintiff has no criminal history and has never been found to be a flight risk or a danger to the community.

For these reasons, all three *Mathews* factors weigh in favor of Petitioner-Plaintiff, and the Court holds that Petitioner-Plaintiff's July 2025 arrest and detention without notice and a pre-detention hearing before a neutral decisionmaker violated his procedural due process rights. *See Bhandohal*, 2026 WL 1954502, at *2–4 (granting habeas petition, where petitioner's procedural due process rights were violated, and requiring "a pre-deprivation bond hearing at which the government

will bear the burden of demonstrating by clear and convincing evidence that [p]etitioner poses a flight risk or a danger to the community if not detained").

**B. Petitioner-Plaintiff is Entitled to a Pre-Detention Hearing Before a Neutral Decisionmaker Where the Government Bears the Burden of Proof by Clear and Convincing Evidence.**

Respondents-Defendants next argue that Petitioner-Plaintiff is not entitled to a pre-detention hearing before a neutral arbiter at which the government bears the burden of proof by clear and convincing evidence. ECF 38 at 30–31. Respondents-Defendants cite the Ninth Circuit's ruling in *Rodriguez Diaz* to argue that Petitioner-Plaintiff is only entitled to a post-deprivation hearing at which Petitioner-Plaintiff bears the burden of proof, and that he is not entitled to additional relief beyond what is provided for under 8 U.S.C. § 1226(a). ECF 38 at 30–31.

However, *Rodriguez Diaz* "do[es] not foreclose all as-applied challenges to § 1226(a)'s procedures." 53 F.4th at 1213. The Ninth Circuit merely held that a non-citizen detained under 8 U.S.C. § 1226(a) did not have a right to a second bond hearing, where the only material change in condition since the first hearing was the duration of his detention. *See id.* at 1210–13; *see also Andundia-Carillo v. Albarran*, No. 25-CV-10380-VC, 2025 WL 4479434, at *1 (N.D. Cal. Dec. 17, 2025) ("In *Rodriguez Diaz*, the Ninth Circuit held that an already-detained petitioner whose initial bond application was denied by an immigration judge was not entitled to a second bond hearing, even though a year had passed since his initial bond hearing. . . . Unlike the petitioner in *Rodriguez Diaz*, Andundia-Carrillo was initially released and has remained released for years."). Thus, *Rodriguez Diaz* is not controlling here.

Indeed, numerous district courts in this Circuit have concluded that non-citizens cannot be re-detained without notice and a pre-detention hearing before a neutral decisionmaker where the government bears the burden of proof by clear and convincing evidence. *See, e.g., Garcia v. Mullin*, No. 25-CV-10617-JST, 2026 WL 2260384, at *2 (N.D. Cal. Aug. 5, 2026) (granting habeas petition and ordering that "[r]espondents may not re-detain Martin Garcia without notice and a pre-deprivation hearing before a neutral immigration judge at which the government establishes, by clear and convincing evidence, that re-detention is warranted because, based on changed circumstances, Martin Garcia poses a danger to the community or a flight risk that can be mitigated

only by detention"); *Bhandohal*, 2026 WL 1954502, at *2–4. Such relief is in accordance with procedural due process and does not run afoul of any binding authority. Moreover, given that Petitioner-Plaintiff's procedural due process rights were already violated when he was arrested and detained in July 2025, the Court holds that lesser procedural protections would not satisfy procedural due process. *See Domingo v. Kaiser*, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) (rejecting government's arguments that post-deprivation hearing was sufficient, and observing that the government's arguments "misapprehend[ed] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").

For the reasons described herein and in the Order Granting Preliminary Injunction, Petitioner-Plaintiff has suffered an irreparable injury because his July 2025 arrest and detention violated his procedural due process rights. Petitioner-Plaintiff would face such a violation again if Respondent-Defendants repeat their unconstitutional conduct. Remedies available at law would not cure Petitioner-Plaintiff's unconstitutional deprivation of liberty. The balance of hardships weighs sharply in favor of Petitioner-Plaintiff, as Petitioner-Plaintiff faces irreparable injury if he is re-detained in violation of his constitutional rights, whereas the government is simply required to provide Petitioner-Plaintiff with basic procedural rights before re-detaining him.

Accordingly, the Court holds that Petitioner-Plaintiff is entitled to permanent injunctive relief protecting him from arrest, re-detention, or removal without notice and a pre-detention hearing before a neutral decisionmaker where the government bears the burden of proof by clear and convincing evidence. *Ibanez Daza v. Albarran*, No. 25-CV-10214-RFL, 2026 WL 1906353, at *3 (N.D. Cal. July 2, 2026) (granting habeas petition and permanently enjoining the government "from re-detaining Petitioner: (1) without notice and a pre-deprivation hearing before a neutral decisionmaker in which an individualized determination is made that she poses a flight risk or danger to public safety such that she must be detained; or (2) in the absence of a material change in

circumstances justifying her detention").

**C. This Order Does Not Prevent Respondents-Defendants From Executing a Final Order of Removal if One is Entered Against Petitioner-Plaintiff.**

Respondents-Defendants assert that [a]ny ruling by this Court . . . must allow for the detention of Petitioner[-Plaintiff] to execute a final removal order." ECF 38 at 32. In response, Petitioner-Plaintiff "acknowledges that by statute, Respondents[-Defendants] may detain him for the 90-day period following a final removal of order." ECF 41 at 21. Nonetheless, Petitioner-Plaintiff asks the Court to closely scrutinize any detention longer than 90 days. ECF 41 at 21.

The Court clarifies that the relief issued in this Order does not prevent Respondent-Defendants from executing a final order of removal if one is entered against Petitioner-Plaintiff. *See Garcia*, 2026 WL 2260384, at *2.

## III. CONCLUSION

For the foregoing reasons, the Court **DECLARES** that Petitioner-Plaintiff's July 2025 arrest and detention violated his procedural due process rights. The Court need not reach Petitioner-Plaintiff's substantive due process claim and therefore declines to do so.

Respondents-Defendants are **PERMANENTLY ENJOINED** and **RESTRAINED** from arresting, detaining, or removing Petitioner-Plaintiff without notice and a pre-detention hearing before a neutral immigration judge where the government bears the burden of establishing, by clear and convincing evidence, that Petitioner-Plaintiff is a flight risk or a danger to the community. This Order does not prevent Respondents-Defendants from executing a final order of removal against Petitioner-Plaintiff if one is entered against him. Accordingly, this Order does not address the circumstances in which Respondents-Defendants may detain Petitioner-Plaintiff in the event Petitioner-Plaintiff becomes subject to an executable final order of removal.

The Clerk shall enter judgment in favor of Petitioner-Plaintiff and against Respondents-Defendants.

United States District Court
Northern District of California

Petitioner-Plaintiff also seeks an award of attorneys' fees and costs under the Equal Access to Justice Act and 28 U.S.C. § 2412. No later than September 18, 2026, the parties shall meet and confer on the issue and submit a stipulation for the Court's approval. If the parties cannot reach a stipulation, then Petitioner-Plaintiff shall file a motion by that same date.

IT IS SO ORDERED.

Dated: August 28, 2026

TRINA L. THOMPSON
United States District Judge